Samuel H. Hofstadter, J.
In this taxpayers’ action, plaintiffs, owners of 327-35 East 29 Street, Manhattan, would have the court exclude these premises from the Bellevue South Urban Renewal Project — contending that the property is an oasis in the blighted area to be rehabilitated. The motion before me is for a preliminary injunction restraining the city and its officials from vesting title in the city in the pending condemnation proceeding until the case is disposed of. Defendants oppose the motion and, in turn, move for summary judgment dismissing the complaint. The court must now choose between those competing positions.
The property may indeed be well-kept and, standing alone, worthy of the pride of its owners. Plaintiffs describe the building as a 10-story industrial building, free of violations, fireproof, sprinklered, built of concrete, steel and brick, with a floor load of 200 pounds, with all windows front and rear and modern in every respect. It is tenanted in the main by printers with heavy equipment who have invested a great deal of money in installations and machinery. It creates, they say, no traffic problem because there is a 5,000-square foot inside loading platform, with three inside loading bays which can accommodate the largest trailer trucks.
*476 The court is not without sympathy with the projected plight of plaintiffs and their tenants. But against this must be weighed the need and rights of the community at large. Removal of urban decay and the provision of planned decent housing are great economic as well as moral concepts to which all our governmental divisions, Federal, State and city, are firmly dedicated and to the accomplishment of which individual hardship must needs be subordinated.
Perforce, plaintiffs concede that buildings, residential or industrial, may be included in a slum clearance project, although the buildings themselves are not substandard or unsanitary, if the inclusion of such buildings in the project is deemed necessary for the effective undertaking of the urban renewal program (General Municipal Law, § 502, subd. 4). The City Planning Commission and the Board of Estimate have made such a finding in this ease (Report City Planning Comm., adopted July 15, 1964, CP 18473; Resolution, Board of Estimate, Sept. 10, 1964). Absent proof that the findings were born of corruption or are irrational or baseless, they are not justiciable (Kaskel v. Impellitteri, 306 N. Y. 73, 78, 80).
Plaintiffs do not argue that the findings were corruptly made, although asserting that the facts were fraudulently misrepresented to the Federal Housing and Home Finance Agency. The proof establishes the fact to be to the contrary — even if this were within plaintiffs’ power to litigate (cf. Hunter v. City of New York, 121 N. Y. S. 2d 841).
Nor is it irrational or baseless to cause the removal of an industrial building devoted to printing from an area to be redeveloped basically for residential use. To the contrary, the City Housing and Redevelopment Board expressly included the block in which plaintiffs’ property is located in the project area to insure that incompatible uses be acquired and cleared.
Plaintiffs’ building would, if retained, constitute such an incompatible use. However desirable the building may be in its present surroundings, when the area is rehabilitated, far from remaining an oasis it would undermine the new character of the neighborhood and tend to destroy the planned improvement.
I have carefully examined plaintiffs’ further argument that the action of the Board of Estimate violated sections 504 and 505 of the General Municipal Law and its resolutions are therefore void for lack of power (Kaskel v. Impellitteri, 306 N. Y. 73, 79, supra). Public records establish that this argument is without merit.
Plaintiffs’ motion is denied and the cross motion granted.